**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SREC MARKETPLACE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHP F&M, LLC, et al.,<br><br>Defendants. | Civ. Action No. 25-746 (GC) (RLS)<br><br>**MEMORANDUM OPINION AND ORDER** |

**SINGH, United States Magistrate Judge.**

**PRESENTLY** before the Court is a Motion by Plaintiff SREC Marketplace, LLC ("SREC"), for Leave to Amend its Amended Complaint (the "Motion"). (Doc. No. 28). Defendant CHP F&M, LLC ("CHP") opposes the Motion, (Doc. No. 31), to which Plaintiff has replied, (Doc. No. 32). The Court has fully considered the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1. For the reasons set forth below, and for good cause shown, the Court **DENIES** the Motion.

## I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

As the parties are familiar with the background and procedural history of this matter, the Court recites only those facts relevant to the present Motion. On January 27, 2025, SREC initiated this action against CHP arising from their June 14, 2022

purchase and sale agreement for renewable energy certificates (the "Agreement"). (*See generally* Doc. No. 1). Through its original Complaint, SREC asserted claims of breach of contract and violation of the New York Uniform Commercial Code (the "UCC"). (Doc. No. 1).

More specifically, SREC alleges that the Agreement required CHP to provide it with 1,500 renewable energy certificates on a quarterly basis, from September 10, 2022 until June 15, 2025, at the price point of $13.25 per certificate. (Doc. No. 1 at ¶ 14). SREC claims that, while CHP provided the first nine deliveries, it failed to provide the certificates as agreed in December 2024 and repudiated prospective deliveries for March 2025 and June 2025. (Doc. No. 1 at ¶ 16). SREC alleges that CHP refused to deliver the certificates notwithstanding its demands to do so. (Doc. No. 1 at ¶ 22). According to SREC, CHP's failure to provide the certificates caused it to default on an agreement with a third party. (*See* Doc. No. 1 at ¶¶ 15, 23). To rectify its agreement with the third party and alleged reputational fallout in the relevant industry, SREC claims it had to purchase the certificates elsewhere at a higher price than provided for in the Agreement. (Doc. No. 1 at ¶¶ 24-25).

On March 28, 2025, before CHP filed its Answer, SREC filed an Amended Complaint (the "AC"), modifying CHP's name to CHP F&M LLC n/k/a CHP F&M REC LLC. (Doc. No. 6 at ¶ 4). Thereafter, CHP[1] filed its Answer and Affirmative

---

[1] CHP alleged that the AC "incorrectly identified" it as "n/k/a CHP F&M REC LLC". (*See* Doc. No. 13 at p. 1).

Defenses, which attached the parties' Agreement. (Doc. No. 13). In relevant part, through its Answer, CHP denied that CHP F&M REC LLC ("CHP REC"), a Wyoming entity, was "an appropriate party in this lawsuit" because it "did not at any time have a contract . . . or conduct business with Plaintiff." (Doc. No. 13 at ¶ 4). In addition, CHP admitted that it was a Pennsylvania entity that ceased operating. (Doc. No. 13 at ¶ 3). It also admitted that James W. Miller ("Miller") is the Principal of CHP. (Doc. No. 13 at ¶ 4).

Following an initial scheduling conference, discovery ensued. (*See* ECF No. 19). During a January 28, 2026 status conference, SREC's counsel indicated that SREC sought to file a second amended complaint to which CHP's counsel objected. (*See* Doc. No. 26). The Court thus set a March 2, 2026 deadline for Plaintiff to file any motion for leave to amend and/or join new parties. (ECF No. 27). SREC thereafter timely filed the instant Motion. (Doc. No. 28).

## II. THE MOTION

Through the Motion, SREC requests leave to join CHP REC and Miller as additional Defendants and to add claims of: fraudulent concealment (Count III); legal fraud (Count IV); piercing the corporate veil (Count V); and affiliate liability (Count VI). (*See generally* Doc. No. 28-1, Ex. B). SREC's proposed Second Amended Complaint (the "proposed SAC") also includes what appear to be clarifying modifications of previously existing allegations that do not substantively alter the claims set forth in the AC. (*See generally* Doc. No. 28-1, Ex. B).

More substantively, SREC seeks to add allegations relating to its interactions with Miller in entering into the Agreement with CHP, Miller's ownership and control of both CHP and CHP REC, and CHP's cessation of operations and selling of its primary asset in or around November 2024. (*See generally* Doc. No. 28-1, Ex. B). The proposed SAC also claims that CHP REC is an affiliate of CHP. (*See* Doc. No. 28-1, Ex. B at ¶ 42). In the Motion, SREC argues that these proposed amendments are based on discovery received from CHP. (*See generally* Doc. No. 28-2).

CHP opposes the Motion, primarily on the basis that SREC's proposed amendments are futile. (*See generally* Doc. No. 31-5). CHP argues there is a paucity of facts that could give rise to joinder of the additional parties and assertion of the additional claims. (Doc. No. 31-5 at p. 1). CHP further contends that a previous (unsigned) agreement between SREC and Miller individually cannot form the basis for the new counts. (*See* Doc. No. 31-5 at p. 2). Citing and attaching documents produced in discovery, CHP explains that Miller clarified that the renewable energy certificates subject to the referenced prior agreement were actually owned by CHP and not by Miller individually. (Doc. No. 31-5 at p. 2; Doc. No. 31-1, Exs. A-C). Lastly, CHP counters SREC's emphasis on the overlap between CHP's and Miller's email and mailing addresses by arguing that more is required to pierce the corporate veil and seek affiliate liability. (Doc. No. 31-5 at p. 2).

In reply, SREC argues that its underlying theory for the additional parties and claims in the proposed SAC go beyond commonality of email and mailing addresses.

(Doc. No. 32 at p. 1). Rather, SREC points out that Miller allegedly formed CHP REC immediately prior to CHP selling its "primary asset" and breaching the Agreement with SREC. (Doc. No. 32 at p. 2). That course of action, SREC contends, was intentionally concealed when CHP still owed SREC obligations under the Agreement and served to skirt any future liability for CHP's breach. (Doc. No. 32 at p. 2). Additionally, SREC adds that CHP and CHP REC provide the same services, at least in part, which Miller also allegedly concealed. (Doc. No. 32 at p. 4).

## III. LEGAL STANDARDS

Rule 15 of the Federal Rules of Civil Procedure provides, in relevant part: "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Notwithstanding the liberality with which Courts grant leave to amend, the Court may, in its discretion, deny leave to amend in one of three instances: (1) the movant engaged in undue delay, bad faith, or dilatory motives; (2) the amendment would cause undue prejudice to the non-movant; or (3) the amendment would be futile. *See, e.g.*, *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004); *BTG Int'l Ltd. v. Actavis Labs. FL, Inc.*, No. 15-5909, 2017 WL 529446, at *2 (D.N.J. Feb. 8, 2017). The decision of whether to grant leave to amend lies within the sound discretion of the Court. *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).

Proposed amendments are futile where "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Merck & Co. Inc. Secs.,*

*Derivative & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007) (internal quotation marks and citation omitted). The Court "'determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff.'" *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (quoting *Winer Fam. Tr. v. Queen*, 503 F.3d 267, 280 (3d Cir. 2007)). As such, "[t]he proposed amended claim 'must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Voto Consulting, LLC v. Capital One Bank*, No. 25-1182, 2025 WL 1862913, at *2 (D.N.J. July 7, 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal citation omitted). In other words, the Court applies the familiar standard of Federal Rule of Civil Procedure 12(b)(6) to the proposed amendments. *Id.*

Where, as here, a party seeks to assert a claim sounding in fraud, including fraudulent concealment, that party must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 360 (D.N.J. 2021). Rule 9(b) of the Federal Rules of Civil Procedure requires that a party state with particularity the circumstances that constitute the alleged fraud while permitting conditions such as malice, intent, knowledge, and other states of mind to be alleged generally. Fed. R. Civ. P. 9(b). Allegations of fraud must be supported by essential factual details of "the who, what, when, where and how of the events at issue." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (quoting *United States v. Omnicare, Inc.*, 903 F.3d 78, 92 (3d Cir. 2018)) (internal quotation marks omitted).

In addition, Rule 20 of the Federal Rules of Civil Procedure governs the addition of new defendants to a pending action. Fed. R. Civ. P. 20(a)(2). Pursuant to that Rule, parties may be joined as defendants if: (A) the relief is being sought jointly, severally, or in the alternative, arising out of the same transaction or occurrence; and "(B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)-(B). Reasonably related claims against different parties are permitted within a single action "without requiring absolute identity of all events." *Bancorp Bank v. Condor Devs., LLC*, No. 15-4451, 2016 WL 11893102, at *2 (D.N.J. Sept. 30, 2016) (internal citation omitted). That said, permissive joinder is within the Court's discretion and must comport with principles of fundamental fairness. *See Dragon Quest Prods., LLC v. John Does 1-100*, No. 12-6611, 2013 WL 2949407, at *3 (D.N.J. June 14, 2013) (citing cases).

## IV. DISCUSSION

CHP argues that the addition of CHP REC and Miller, as well as the claims for fraudulent concealment, fraud, veil piercing, and affiliate liability are futile because each lacks a sufficient factual basis. (Doc. No. 31-5 at pp. 6-12). As an initial matter, the Court finds that SREC's proposed joinder of CHP REC and Miller satisfies Rule 20(a)(2) of the Federal Rules of Civil Procedure. SREC's proposed claims against these two new parties arise out of the exact same transaction already at issue here and indeed involve common questions of law and fact. *See* Fed. R. Civ. P. 20(a)(2). Accordingly,

the Court thus turns to whether the proposed claims are futile under Rule 15 of the Federal Rules of Civil Procedure.[2]

### A. Fraudulent Concealment And Legal Fraud Claims

In its proposed Count III, SREC seeks to assert a claim for fraudulent concealment. (*See* Doc. No. 28-1, Ex. B at ¶¶ 54-60). Through this proposed claim, SREC alleges that CHP intentionally concealed the sale of its primary asset and cessation of operations and that Miller "concealed the fact that he formed CHP REC shortly before selling CHP's primary asset." (Doc. No. 28-1, Ex. B at ¶¶ 55-56, 58). It further claims that it relied upon "the agreement it had with CHP and [its] communications with Mr. Miller" to its detriment and that Miller's representations "failed to include material information about CHP and CHP REC[.]" (Doc. No. 28-1, Ex. B at ¶¶ 59-60).

Similarly, in its proposed claim for legal fraud in Count IV, SREC asserts that Miller had "authority to make representations on behalf of CHP and CHP REC," intended to cease CHP's operations, and "did not intend to honor CHP's contract with SREC[.]" (Doc. No. 28-1, Ex. B at ¶¶ 62-64). It adds that Miller was obligated to disclose the cessation of CHP's operations and the formation of CHP REC and

---

[2] Both SREC and CHP cite New York and New Jersey law in their submissions. The Agreement's choice of law provision elects New York law to govern only the Agreement itself. (Doc. No. 28-2; Doc. No. 31-5; Doc. No. 32 at pp. 2-3). Both parties appear to agree that New Jersey law applies to SREC's proposed non-contractual claims because the Agreement's choice of law provision applies only to the breach of contract claims. (Doc. No. 31-5 at pp. 4-5; Doc. No. 32 at pp. 2-3).

"intended" SREC to rely upon "the misrepresentations and omissions of fact." (Doc. No. 28-1, Ex. B at ¶ 65). SREC claims that it relied upon "the information provided by Mr. Miller[,]" causing it to be "damaged." (Doc. No. 28-1, Ex. B at ¶¶ 66-67).

To state a claim for fraudulent concealment, a plaintiff must allege that the defendant owed it a duty to disclose a material fact, did not disclose that fact, and intended to defraud or deceive the plaintiff. *See, e.g.*, *in re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices, and Prods. Liab. Litig.*, 553 F. Supp. 3d 211, 230-31 (D.N.J. 2021) (citing, *inter alia*, *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J. 2000)). In addition, the plaintiff must allege that it reasonably relied upon the omission and was damaged as a result thereof. *See id.*; *Arcand*, 673 F. Supp. 2d at 305. Courts do not imply a duty to disclose, which may otherwise arise in one of three ways: (1) a fiduciary relationship; "(2) relationships where one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied; and (3) relationships involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties." *Arcand*, 673 F. Supp. 2d at 305 (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993)).

The same elements are required for claims of legal fraud. *See, e.g.*, *Kennedy v. Am. Airlines Inc.*, 760 F. App'x 136, 139-40 (3d Cir. 2019); *see also Lightning Lube*, 4 F.3d at 1185 ("[W]here a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" (citing *Berman v. Gurwicz*, 189

N.J. Super. 89, 93-94 (Ch. Div. 1981))). Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud" for both of these claims. Fed. R. Civ. P. 9(b).

Here, although not clearly articulated, SREC appears to seek to assert the claim of fraudulent concealment against CHP and Miller and the claim of legal fraud against Miller. To support these claims, SREC alleges that CHP and Miller intentionally withheld the facts that Miller formed CHP REC and that CHP sold its primary asset and ceased operations. SREC flatly claims that this was "material information about CHP and CHP REC," causing it damage. (Doc. No. 28-1, Ex. B at ¶ 60). SREC, however, provides no factual detail as to how the information was material and how it was damaged separate from its claims that CHP breached the Agreement.

In addition, SREC alleges that Miller made misrepresentations but does not identify what specifically was misrepresented. (*See* Doc. No. 28-1, Ex. B at ¶¶ 59 ("SREC Marketplace relied on the agreement it had with CHP and his [*sic*] communications with Mr. Miller."), 60 ("As a result of such reliance on Mr. Miller's representations . . . ."), 62 ("Mr. Miller had the authority to make representations on behalf of CHP and CHP REC[.]"), 65 ("Mr. Miller intended for SREC Marketplace to rely on the misrepresentations and omissions of fact."), 66 ("SREC Marketplace reasonably relied on the information provided by Mr. Miller[.]"), 67 ("As a result of Mr. Miller's misrepresentations and omissions, SREC Marketplace has been damaged.")). SREC does not identify the what, when, or where of these alleged misrepresentations.

In addition, SREC asserts, in conclusory fashion, that Miller "was obligated to disclose" that CHP ceased operations because "he formed CHP REC to provide, at least partially, similar services as CHP[.]" (Doc. No. 28-1, Ex. B at ¶ 63).

To determine whether SREC plausibly asserts claims for fraudulent concealment or legal fraud, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Here, SREC's proposed allegations do not provide sufficient factual information to plausibly show that there has been fraudulent concealment or legal fraud. First, no specific representations or misrepresentations are identified with the specificity required by Rule 9 of the Federal Rules of Civil Procedure.

Second, to plausibly assert these claims against CHP and/or Miller for omissions of fact, SREC must offer facts supporting its conclusory allegations of materiality, reliance, and injury. Yet, SREC offers no facts to support those allegations other than CHP allegedly breached its Agreement with SREC. *See, e.g.*, *Chazanow v. Sussex Bank*, No. 11-1094, 2012 WL 12905291, at *3-4 (D.N.J. Nov. 30, 2012) (finding plaintiff failed to allege sufficient factual information to "credibly allege" that he relied upon alleged misstatements, which was undermined by the parties' written contract). Further, in any event, the economic loss doctrine precludes SREC "'from recovering in tort economic losses to which their entitlement only flows from a contract.'" *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995)).

Third, SREC fails to provide sufficient factual allegations to support a plausible claim that CHP and/or Miller owed it a duty of disclosure. Again, SREC purports to convert CHP's alleged contractual obligations of good faith and fair dealing to one creating a "special relationship" that obligated CHP and/or Miller to disclose the status of CHP's operations and assets and Miller's formation of a separate entity. However, there is insufficient factual detail required by Rule 9 of the Federal Rules of Civil Procedure to plausibly assert a legal duty to disclose such facts. For those reasons, the proposed fraudulent concealment and legal fraud claims are futile.

## B. Piercing The Corporate Veil

Through proposed Count V, SREC seeks to pierce the corporate veil to assert personal liability against Miller. (Doc. No. 28-1, Ex. B at ¶¶ 68-73). SREC alleges that Miller, as owner of CHP and CHP REC, exercised exclusive control over the entities and entered into agreements with SREC in his individual capacity before changing the contracting party to CHP. (Doc. No. 28-1, Ex. B at ¶¶ 69-70). SREC also claims that Miller used an email address associated with another entity to conduct business with it. (Doc. No. 28-1, Ex. B at ¶ 71). According to SREC, Miller ceased CHP's operations, sold CHP's primary asset, and formed CHP REC to avoid liability under the Agreement. (Doc. No. 28-1, Ex. B at ¶ 72).

Piercing the corporate veil is an equitable device to "remedy a fundamental unfairness perpetrated under the guise of the corporate form" that would otherwise insulate shareholders from a corporation's liabilities. *Linus Holding Corp. v. Mark Line*

*Indus., LLC*, 376 F. Supp. 3d 417, 424-25 (D.N.J. 2019). Because veil piercing is state-specific, the Court must first determine the applicable state law. To do so, courts consider the state of incorporation of the entity sought to be pierced "or conduct the flexible 'governmental interest analysis,' applying the law of the state 'that has the most significant connections with the parties and the transaction.'" *Antico v. RAM Payment, L.L.C.*, No. 20-12130, 2022 WL 971724, at *4 (D.N.J. Mar. 31, 2022) (quoting *Las Vegas Sands Corp. v. Ace Gaming, LLC*, 713 F. Supp. 2d 427, 443 (D.N.J. 2010)); *accord Linus Holding*, 376 F. Supp. 3d at 424.

Pursuant to Pennsylvania law, where CHP is incorporated, veil piercing is warranted if "one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests[.]" *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 508-09 (E.D. Pa. 2014) (quoting *Ashley v. Ashley*, 482 Pa. 228, 237 (1978)). Pennsylvania law applies a stringent multifactorial analysis to determine whether "exceptional circumstances warrant such an exceptional remedy." *Id.* at 509 (citation omitted). Such factors include "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." *Id.* (internal quotation marks and citation omitted).

Similarly, under New Jersey law—which arguably holds a strong governmental interest in protecting its citizens like SREC—piercing the corporate veil requires: (1) a unity of interest and ownership such that "the separate personalities of the corporation

and individual no longer exist[;]" and (2) the failure to pierce the corporate veil would "sanction a fraud or promote injustice." *Linus Holding*, 376 F. Supp. 3d at 425 (quoting *State Cap. Title & Abstract Co.*, 646 F. Supp. 2d 668, 679 (D.N.J. 2009)) (internal quotation marks omitted). Whether entities share a unity of interest considers whether the corporation: (1) is grossly undercapitalized at the time of organization; (2) failed to observe corporate formalities; (3) was insolvent during the relevant timeframe; (4) had funds siphoned out by a dominant shareholder; (5) has non-functioning officers or directors and/or a lack of corporate records; and (6) is merely a façade for a dominant shareholder's operations. *Id.* (citing *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) (applying New Jersey law)). A party seeking to allege a theory of veil piercing must allege sufficient "facts necessary to give rise to the reasonable inference that the alter ego test could be satisfied." *Accurso*, 23 F. Supp. 3d at 510 (internal quotation marks and citation omitted).

Here, the proposed SAC fails to provide a sufficient factual basis to support piercing CHP's corporate veil under either Pennsylvania or New Jersey law. In the proposed SAC, SREC relies primarily on the common email and mailing addresses utilized by CHP, CHP REC, and Miller. (Doc. No. 28-1, Ex. B at ¶¶ 69-73). While it also includes general allegations involving the formation (and timing) of CHP REC, the sale of CHP's primary asset, and the commonality of business between CHP and CHP REC, (*see* Doc. No. 28-1, Ex. B at ¶ 72), the proposed claim does not offer factual allegations to support a plausible claim that there is a "unity of interest" or that Miller

used the corporate form to perpetuate a fraud. *See, e.g., Linus Holding*, 376 F. Supp. 3d at 425. Accordingly, SREC's proposed claim for piercing the corporate veil is futile.

### C. AFFILIATE LIABILITY

Similarly, SREC also seeks to hold CHP REC liable through a claim of affiliate liability in its proposed Count VI. (Doc. No. 28-1, Ex. B at ¶¶ 74-80). SREC alleges that Miller created CHP REC to conduct the same business as CHP and "could have had CHP REC assume the SREC Marketplace contract." (Doc. No. 28-1, Ex. B at ¶ 78). It claims that, as a result of the formation of CHP REC, it "has been harmed." (Doc. No. 28-1, Ex. B at ¶ 80). The proposed SAC appears to seek to hold CHP REC liable for the breach of contract claim against CHP.

New Jersey has permitted piercing the corporate veil between a subsidiary and a parent corporation where the former was "a mere instrumentality" of the latter. *See, e.g.., State, Dept. of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 500-01 (1983) (internal quotation marks and citations omitted). To hold a parent entity liable for the acts of a subsidiary requires a finding that the parent used "the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law." *Id.* at 501 (citations omitted). Similarly, "[h]orizontal veil piercing occurs when the court is asked to ignore the autonomous corporate structure of affiliate corporations and make their assets available to satisfy claims." *Loanb Source Inc. v. NEWITY LLC*, No. 22-1255, 2026 WL 796920, at *2 (D. Del. Mar. 23, 2026) (internal quotation marks and citations omitted). In addition, agency principles may impute an agent's contractual obligations to a principal

if the agent acted within the scope of its delegated authority. *See, e.g.*, *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 635 Pa. 427, 445 (2016).

Here, SREC's proposed allegations offer only bald conclusions of Miller's "complete domination and control" over both CHP and CHP REC. (Doc. No. 28-1, Ex. B at ¶ 75). SREC offers no facts—other than common ownership, contact information, and potential similar business engagement—to plausibly show what affiliation may exist or that CHP REC exercises any control or domination over CHP. *See, e.g.*, *in re U.S. Vision Data Breach Litig.*, No. 22-6558, 2025 WL 615366, at *4 (D.N.J. Feb. 26, 2025) (finding that where the plaintiffs "have merely alleged bare-boned allegations of common control for their alter ego theory, without any supporting facts," they have failed to meet the plausibility standard "to survive a 12(b)(6) motion"). SREC also alleges that CHP *could* assign its contractual rights and obligations under the Agreement to an affiliate entity, such as CHP REC, but does not assert that it has done so (notwithstanding the production of discovery by CHP thus far). (Doc. No. 28-1, Ex. B at ¶ 77). Absent factual allegations to plausibly show the extent of any relationship between CHP and CHP REC, SREC's purported affiliate liability claim is futile.

## V. CONCLUSION

Therefore, having fully considered the parties' submissions, and for the reasons set forth herein and for other good cause shown, the Court finds that SREC's proposed

amendments are futile and thus fail to meet the standard to permit amendment under Rule 15 of the Federal Rules of Civil Procedure. Accordingly,

**IT IS** on this **18th** day of **September 2026** hereby

**ORDERED** that SREC's Motion for Leave to Amend (Doc. No. 28) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall **TERMINATE** the Motion pending at Docket Entry Number 28.

**SO ORDERED.**

/s/ Rukhsanah L. Singh
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**